## SALINAS v. TURNER.

1. A married woman has no power to borrow money for the use of her husband, nor to give her note therefor, nor bind her separate estate by a mortgage executed to secure such note. Therefore such note and mortgage cannot be enforced against the maker where the lender knew that the money was to be used in paying a judgment debt of the husband; and knowledge by the lender's agent, through whom the loan was negotiated, was knowledge by the lender himself.

2. A liability for this note and mortgage cannot be fixed upon the married woman by procuring an assignment to her of the husband's debt so paid with this money, she not having borrowed the money for the purpose of purchasing the judgment, but of paying it, and its assignment to her not having been made at her request or with her knowledge.

Before HUDSON, J., Barnwell, March, 1890.

This was an action by C. Edward Salinas against John R. Turner and others. The opinion states the case.

*Mr. L. T. Izlar,* for appellants.

*Mr. Robert Aldrich,* contra.

June 30, 1890.    The opinion of the court was delivered by

Mr. Chief Justice Simpson. In this case, Mrs. John E. Turner, wife of the defendant, John E. Turner, executed a note for $800, payable to the plaintiff, Salinas, for borrowed money, to secure which she also executed a mortgage of certain real estate, her separate property. The money was lent to Mrs. Turner through the agent and attorney of Salinas, Robert Aldrich, Esq. The transaction took place, on the part of Mrs. Turner, through the agency of her husband, John E., and the purpose of getting the money was to have it applied to a judgment held by Pelzer, Rodgers & Co., against the said John E. Turner, which was about being pressed ; and the greater part of the money was thus applied, when Pelzer, Rodgers & Co. assigned their judgment to Mrs. Turner ; Mrs. Turner, however, had no knowledge of this assignment, the whole matter having been arranged through Mr. Aldrich and Mr. Turner, Mrs. Turner simply giving her note and mortgage at home and sending them to Mr. Aldrich by her husband. Some time after this, Mrs. Turner died, and the note not having been paid, the action below was instituted against the defendants, her heirs and distributees, "for a strict foreclosure, with the usual allegations." The defence set up was, that Mrs. Turner was a married woman at the time of the execution of the papers mentioned, and, therefore, incapable of executing the same, as they were not made with reference to her separate estate.

The case was heard by his honor, Judge Hudson, upon testimony reported by the master. The decree of his honor is not set out in full in the record, but it is stated "That the court held, under the evidence reported, that the contract was executed with reference to the separate estate of the mortgagor, and that he made the usual decree in foreclosure." The appeal assigns error to this decree, in that his honor held that the contract of Mrs. Turner was made with reference to her separate estate, and, therefore, binding.

The facts of the case were, as above stated, and the questions

involved here must be determined by, and adjudicated upon these facts. Now, it has been held by this court in several cases, recently decided, that while a married woman may borrow money for her own use, &c., and secure the same by a valid mortgage, yet that she cannot do this for the benefit of her husband, provided the lender has knowledge of such intended use. This has been so recently and so plainly decided that we do not deem it necessary here to examine into the reason and foundation of this proposition. We think it sufficient simply to refer to the cases, to wit: *Tribble* v. *Poore*, 30 S. C., 97 ; *Gwynn* v. *Gwynn*, 31. *Id.*, 482 ; *Greig & Matthews* v. *Smith*, 29 *Id.*, 429 ; and *Goodgion* v. *Vaughn*, 32 *Id.*, 499. If these cases have not established this proposition beyond controversy or doubt, then we do not know how a legal proposition could be established, certainly not by the decisions of a court of last resort.

Now, the only question in the case is, do the facts bring it under this principle ? There is no doubt but that Mr. Aldrich, who transacted the business, and who passed the money over to Mr. Turner for Mrs. Turner, knew the purpose of the borrowing. There is no doubt but that Mr. Aldrich was the agent of Salinas in the transaction. Is the knowledge of an agent the knowledge of his principal ? Assuredly so as to matters within the scope of his agency. This is elementary, and certainly does not need the citation of authority to support it. We must therefore hold that Salinas, the real lender, knew that this money was borrowed for the express purpose of paying a debt of the husband, and to relieve him from a threatened pressure of the judgment of Pelzer, Rodgers & Co., and that it was so used.

It is said, however, that Mrs. Turner used this money in purchasing the judgment on her husband, and that she had the right, though a married woman, to purchase property. It is true, that a married woman may purchase property, and doubtless a judgment may be regarded as property, but the testimony here is that Mrs. Turner knew nothing whatever about the assignment of this judgment to her. She borrowed the money to relieve her husband from this judgment, and not to buy it. The object was to pay the debt of her husband to Pelzer, Rodgers & Co., thus diverting her separate property from her own use as a separate

estate, to the use of her husband in the payment of his debts—
the very thing which the constitution forbids. To allow this
solemn constitutional provision for the protection of married
women and their separate estates to be evaded in this round-
about way, would, it seems to us, be a mockery emasculating said
provision and rendering the whole law upon the subject utterly
useless and worthless.

It is the judgment of this court, that the judgment of the Cir-
cuit Court be reversed.